MEHETABEL G. CRAIN, RESPONDENT, *v.* JOHN WRIGHT, APPELLANT.

*Devise of real estate — when the devisee takes in fee simple — what delivery of a deed is sufficient to pass title.*

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict rendered at the Niagara Circuit, and from an order denying a motion for new trial made upon the minutes of the justice before whom the action was tried.

This action was brought to recover the possession of lands. On the 9th day of October, 1854, one John Wright died, seized of the lands in question, leaving a last will and testament, which has been duly admitted to probate, in and by which he devised certain property as follows: "Unto my dear wife Anna I give and bequeath fifty acres of land off the north end of my farm, to have and to hold for

her benefit and support; and I also give to my aforesaid wife Anna all my household furniture, beds and bedding. Unto my son, John Wright, Jr., I give and bequeath all the remainder of my property after paying the following legacies, respectively : " [Then followed certain legacies.]

The defendant, John Wright, Jr., entered into the possession of the farm, including the fifty acres devised to Anna, and still continues to occupy the same. Anna Wright, the widow, lived with him until her decease, December 27, 1873. On the 9th day of June, 1873, she executed two deeds, one conveying to the respondent the thirty acres described in the complaint, being part of the fifty acres willed to her by her husband, and the other conveying the remaining twenty acres to her son Francis Wright. The deeds were acknowledged, and after her death recorded in the office of the clerk of the county.

The court at General Term said : " The first question which it becomes necessary to determine is, whether or not Anna Wright took a fee to the lands in question under the will of her husband. It is contended on the part of the appellant that the words, ' to have and to hold for her benefit and support,' limit the devise to an estate for life. The question thus presented is not free from difficulty. The statute provides that the term ' heirs,' or other words of inheritance, shall not be requisite to create or convey an estate in fee, and every grant or devise of real estate, or any interest therein, hereafter to be executed, shall pass all the estate or interest of the grantor or testator, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of such grant." (R. S., tit. 5, part 2, chap. 1, § 1 [1 R. S., 748].) The intent to pass a less estate than a fee, does not appear by express terms, so that the only question is whether or not such an intent is necessarily implied from the words used. The first clause of the sentence is absolute in terms: "I give and bequeath fifty acres of land off the north end of my farm." Then follow the words, " to have and to hold for her benefit and support." She is to have and to hold *both* for her benefit and support. It is true that her death would terminate her support, and it could not be held for that purpose afterwards, and it is quite possible that her right to support would not descend to her heirs. The word " benefit," however, has a broader and

more comprehensive meaning. It embraces every use to which she may devote the land, and we are inclined to the opinion that it is sufficiently comprehensive to give her a fee. This conclusion appears to be borne out by the case of *Campbell* v. *Beaumont* (91 N. Y., 464). The will in that case provided as follows: "I leave to my beloved wife Mary Ann, all my property   *   *   *   to be enjoyed by her for her sole use and *benefit,* and in case of her decease, the same, or such portion as may remain thereof, it is my will and desire that the same shall be received and enjoyed by her son Charles.' It was held in that case that she took a fee, and that the provision that so much as may remain after her decease be received by Charles, was not sufficient to show an intent on the part of the testator to limit the estate given to the wife.

"Again, the will gives to John Wright, Jr., 'all the remainder of my property,' etc. It is quite apparent that the testator intended by his will to dispose of his entire property, both real and personal. The words 'the remainder of my property,' undoubtedly referred to that which remained after taking out the devise to the wife. The word 'property' covers both real and personal. No allusion is made to an estate in remainder, and if such an estate was created by the will, we should then be of the opinion that such estate had not been disposed of, so that on the termination of the life estate the land would go to the testator's heirs-at-law. This result does not appear to us to have been the intention of the testator. He undoubtedly intended to dispose of his entire estate, both real and personal.

" It is contended, in the second place, that the deed from Anna Wright to the plaintiff was never delivered so as to vest the title in the plaintiff. It appeared upon the trial that after Anna Wright had executed the deeds, that they were left lying upon the table at the plaintiff's house; that Anna Wright then took the deeds from the table and handed them to the plaintiff's husband, saying that she wanted he should take care of the deeds, and she didn't want them exposed during her lifetime, for the reason that her first will had got out and had made a fuss, and on that account she didn't want these deeds to get out and make another fuss; that she wanted no one to know it except those who were obliged to know it. She said further, after her death, she wanted Mehetabel (the plaintiff)

to have hers and Francis his. It appeared further that the plaintiff's husband took the deeds to the office of Judge HOLMES and left them in his custody and keeping; that after the death of Mrs. Wright, Francis' deed was sent to him and the plaintiff's deed was recorded in the office of the clerk of the county. The court submitted to the jury the question as to whether or not it was the intention of Mrs. Wright, at the time that she handed the deeds to the plaintiff's husband, to have them take effect as a present disposition of the property, or to operate as a testamentary disposition after her death. The jury found in favor of the plaintiff, and it appears to us that under the evidence, such finding is conclusive.

" The intention of the party at the time of the delivery of the deed was doubtless a question for the jury. The rule is correctly stated in the case of *Hathaway* v. *Payne* (34 N. Y., 92–105). It is there stated that when a deed is executed and not immediately delivered to the grantee, but handed to a stranger to be delivered to the grantee at a future time, whether it is to be considered as a deed of the grantor presently or as an escrow, depends upon the intent of the parties to be gathered from the words used and the purposes expressed; that where the future delivery is to depend upon the performance of some condition, it will be deemed an escrow; where it is merely to wait the lapse of time or the happening of some contingency and not the performance of a condition, it will be deemed the grantor's deed presently.

" In the case under consideration no condition was attached to the delivery of the deed. The only request made was that it should not be exposed during her lifetime.

" In the case of *Tooley* v. *Dibble* (2 Hill, 641), a father executed a deed conveying to his son a farm, and placed it in the hands of a third person, with instructions to deliver it to the son after the father's death. After the father died the deed was delivered to the son. It was held that the title of the son took effect at the time it was delivered to the third person for him, and that this deed, before the father's death, passed the title.

" In the case of *Ruggles* v. *Lawson* (13 Johns., 285), a father executed a deed to his two sons, and delivered it to a third person, with instructions that it be delivered to his sons in case he should die without making a will. He subsequently died without a will and

the deed was delivered to his sons. It was held that this was a valid deed and took effect from the time of its first delivery." (See, also, *Hunter* v. *Hunter*, 17 Barb., 25; *Belden* v. *Carter*, 4 Day, 66; *Wheelwright* v. *Wheelwright*, 2 Mass., 447.)   *   *   *

*George C. Greene*, for the appellant.

*Richard Crowley*, for the respondent.

Opinion by HAIGHT, J.; BARKER, P. J., and BRADLEY, J., concurred.

Judgment and order affirmed.